DANIEL R. DYER vs. WILLIAM B. BAYNE. ROBERT S. TILTON vs. ALEXANDER SOMERVILLE. EDWARD H. OWENS vs. PETER W. HAWKINS. JOHN E. CAR-PENTER vs. LEO H. HAYDEN.

*Construction of Article 2, section 13, of the Constitution— Office of Tobacco Inspector—Mandamus—Appointment re-lating back to the time of the Nomination—General principle as to the Construction of the Constitution.*

D. was duly appointed to and held the office of Tobacco Inspector, in the State Tobacco Warehouse No. 1, in the City of Baltimore, from the first Monday of March, 1878; and on the 24th day of February, 1880, and within fifty days from the commencement of the session of 1880, of the Legislature, the Governor nominated, and sent to the Senate for the advice and consent of that body the name of B., as the successor of D. in office, as required by the Con-stitution, Art. 2, sec. 13. The Senate did not act upon this nomina-tion until the 5th of April, when it was confirmed. The Governor issued the commission to B. on the 12th of April, 1880, whereby he was declared to be appointed and commissioned to the office of Inspector in Warehouse No. 1, for the term of two years, from the first Monday of March, 1880. The commission was duly accepted, and B. thereupon gave bond and took the oath of office as required by law; and on the 17th of April, 1880, made formal demand of D. for the surrender of Tobacco Warehouse No. 1, together with all the books, &c. This demand was refused by D. who retained possession. B. thereupon applied for the writ of mandamus. D. answered and contended that inasmuch as the Senate did not act upon the Governor's nomination of B. until after the first Monday of March, 1880, the term of office for which B. had been appointed, did not, by the terms of the Constitution, commence until the first Monday of March, 1881, that being the first Monday of March next ensuing the *appointment*, and that as he, D. was entitled to hold over until his successor was duly qualified, and could right-fully enter into the possession of the office, he, D. was entitled to hold over until the first Monday of March, 1881; and thus hold for three years instead of two. Section 13, of Article 2, of the

Constitution, is as follows: "All civil officers appointed by the Governor and Senate, shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next, ensuing their appointment, and continue for two years, (unless removed from office,) and until their successors, respectively qualify according to law; but the term of office of the Inspectors of Tobacco, shall commence on the first Monday of March next, ensuing their appointment." HELD:

1st. That the leading purposes of this section were, first, to limit a time within which the Governor should make his nominations to the Senate; second, to declare and make uniform the term of office for the officers to be nominated; the particular day for the commencement of the term being merely incidental to the last mentioned purpose.

2nd. That it was the purpose of the framers of the Constitution that the term of office should commence and terminate with reference to the end of each regular biennial session of the Legislature.

3rd. That therefore the nomination and confirmation of B. was intended for the term of office commencing with the first Monday of March, 1880; and continuing for two years, unless, &c.; and he was entitled to the writ of *mandamus* to compel the surrender from D. of Tobacco Warehouse No. 1, together with the books, &c.

4th. That the Governor having made the nomination of B. within the fifty days, and before the first Monday of March, 1880, and the Senate having confirmed the nomination during the regular session, the appointment was complete from the time of such confirmation, and it related back to the time of the nomination.

In construing the Constitution, it must be regarded as a whole; and such construction of its parts must be adopted as will maintain in force and harmonious operation the main and leading provisions of the instrument.

APPEALS from the Superior Court of Baltimore City.

William B. Bayne of Prince George's County filed his petition in the Superior Court of Baltimore City, alleging that he had been appointed by the Governor of the State, by and with the advice and consent of the Senate, to the

Dyer *vs.* Bayne.

office of Tobacco Inspector in the State Tobacco Warehouse No. 1, in the City of Baltimore, and that he had been duly commissioned, and had given bond, and had taken the oath of office as required by law ; that he had made formal demand of Daniel R. Dyer for the surrender of said Tobacco Warehouse No. 1, together with all the books, &c.; and that said demand was refused and that said Dyer still retained possession. The petition asked for the writ of *mandamus* commanding the defendant to surrender to the petitioner Tobacco Warehouse No. 1, and all thereunto belonging. The defendant answered, contending that inasmuch as the Senate did not act upon the Governor's nomination of the plaintiff until after the first Monday of March, 1880, the term of office for which the plaintiff had been appointed, did not by the terms of the Constitution (Art. 2, sec. 13,) commence until the first Monday of March, 1881, that being the first Monday of March next ensuing the appointment ; and that as he was entitled to hold over until his successor was duly qualified, and could rightfully enter into the possession of the office, he was entitled to hold over until the first Monday of March, 1881. To the answer of the defendant the plaintiff demurred. Three other suits of a similar character to that of *Bayne vs. Dyer*, were instituted, and the Court, (GILMOR, J.,) on the 17th of May, 1880, passed an order sustaining the demurrer filed to the answer in each of the cases, and directing the writ of *mandamus* to issue as prayed. From this order the defendants appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and IRVING, J.

*M. Bannon* and *Bernard Carter*, for the appellants.

It is clear from Article 2, sections 10 and 13 of the Constitution that while the Governor *nominates* to the Senate, the *appointment* is the *joint* act of the *Governor* and *Senate*.

The language of the tenth section is: "He shall *nominate*, and by and with the *advice and consent* of the *Senate*, *appoint*." And the language of the thirteenth section is equally explicit: All civil officers "*appointed* by the Governor *and Senate* shall be *nominated* to the Senate, &c., &c."

Until therefore, the Senate has joined in the act there is no *appointment*. The Senate does not join in the act until it votes upon the nomination. If this vote is favorable it is *called* a "*confirming*." It is, in law and in fact, the performance by the Senate of its part of the *appointment*. The *appointment* therefore, does not take place until the Senate has thus acted. And such is the law as established by the decided cases. See among others—*Watkins vs. Watkins*, 2 *Md.*, 355; *McBlair vs. Bond*, 41 *Md.*, 155; *U. S. vs. LeBaron*, 19 *How.*, 73; *U. S. vs. Bradley*, 10 *Peters*, 314.

The Senate did not take action upon the nominations of the petitioners until April 5th, 1880, and therefore, their *appointment* was made on and dates from that day.

By the express terms of the thirteenth section of Article 2 of the Constitution, the term of office of the Inspectors of Tobacco is made to commence on the first Monday of *March* next *ensuing* their *appointment*. The *appointment* having been made on April 5, 1880, the "first Monday of March next ensuing their appointment," is necessarily the first Monday of March, 1881. Hence, it follows that the term of office of the petitioners does not commence until the first Monday of March, 1881, and of course they can have no title to the possession of the warehouses until their term of office begins. It necessarily results therefore, that their petition must be dismissed.

This being so, it is a matter with which they have no concern, whether the respondents are entitled to continue in office or not. But it is clear that the tenure of the respondents continues until March, 1881. The same

section of the Constitution (Article 2, section 13,) provides that the term of all civil officers appointed by the Governor and Senate (except in cases otherwise provided for in the Constitution) shall commence on the first Monday of May next ensuing their appointment, and continue for two years, *and until their successors respectively qualify according to law;* but the term of the Tobacco Inspectors shall commence on the first Monday of March next ensuing their appointment.

It is thus plain that the only difference between the term of the Tobacco Inspectors and that of all other civil officers mentioned is, that the term of the Tobacco Inspectors begins the first Monday of March, instead of May. All the other provisions apply to them ; and therefore, they hold for two years, *" and until their successors qualify according to law."* The petitioners are their successors, and the petitioners' term does not begin until March, 1881. They are not, therefore, by law, qualified to enter upon their duties until that time ; hence, the respondents hold until then.

The fact that the holding over of the respondents will cause hereafter the term of office to begin in the years intervening between the sessions of the Legislature is nothing objectionable. *Marshall vs. Harwood,* 5 *Md.,* 432.

The only ground upon which the provision of the Constitution that "the term of office of the Inspectors of Tobacco shall commence on the first Monday of March next ensuing their appointment," is sought to be *nullified* is, that as the same section says that the term of office of the Tobacco Inspectors shall " continue for *two* years, and until their successors qualify according to law," the Court must, in order to prevent the appellants from holding over for longer than *two* years, *nullify* the provision which declares that the term of office of the appellees shall commence on the first Monday of March next *ensuing* their appointment, and make it begin a month before their appointment, viz., on the first Monday of March, 1880.

Now, even if the Constitution had only said that the term of office of the Tobacco Inspectors should "continue for *two years*," then, although the term of office of the appellants who were *appointed prior* to the first Monday of March, 1878, and whose term, therefore, began on the first Monday of March, would have ended on the first Monday of March, 1880, yet they would have held until their successors were duly qualified to assume the office. *Thomas vs. Owens*, 4 *Md.*, 221.

But the thirteenth section of Article 2, expressly provides that they shall hold not only for two years from their appointment, but also "until their successors shall qualify according to law." Therefore, the appellants' term of office continues *not only* for *two years* from their appointment, that is, two years from the first Monday of March, 1878, but until their successors qualify according to law. Therefore, as the appellees' term does not begin until the first Monday of March *succeeding their appointment*, that is, until the first Monday of March *succeeding* April 5th, 1880, they cannot qualify according to law, until their term begins, and therefore the appellants' term continues until the first Monday of March, 1881, which is the first Monday succeeding their appointment.

The whole theory of the appellees is based on the assumption that the 13th section of Article 2, as it now stands, is to be construed as if it read "the term of office of the Tobacco Inspectors shall commence on the first Monday of March of the year in which the session of the General Assembly shall begin." If this had been the language of the Constitution, then it might, with some show of plausibility, be contended, as it is now, that no matter when the *appointment* was made, the term would begin on the first Monday of March of the year the Legislature began its session, and that, therefore, the term of the appellees began on the first Monday of March, 1880, though they were not appointed until April 5th, 1880.

Dyer *vs.* Bayne.

But the Constitution does not so provide; on the contrary, it provides that the term shall commence, not on the first Monday of March of the year during which the session of the Legislature begins, but on the first Monday of March *ensuing* that *appointment.* Does not this show, conclusively, that the *date of the appointment* is the *terminus a quo,* from which the first Monday of March is to be reckoned ?

Again, does not the construction contended for by the appellees make the Constitution read as if it said that the term of office of the appellees shall begin from the first Monday of March *preceding* their appointment instead of *ensuing* their appointment.

The foundation of the whole argument on the part of the appellees, and the decision of the Judge of the Superior Court of Baltimore City, is nothing more or less than that the interpretation of the appellants, which is admitted to be in accordance with the plain purport of the Constitution, involves the result that the Senate by refusing to make the appointment until after the first Monday of March of the year they are in session, may prolong the term of the then existing Inspectors beyond the two years. That this is no reason against the words of the Constitution being interpreted according to their plain import is *res adjudicata* in Maryland. *Watkins vs. State,* 2 *Md.,* 355 ; *Marshall vs. Harwood,* 5 *Md.,* 432 ; *State vs. Jarrett,* 17 *Md.,* 147.

*D. S. Briscoe* and *Frederick Stone,* for the appellees.

The question of the title to the office at this time turns upon the true construction of section 13, Article 2, of the Constitution. In construing the Constitution the whole instrument must be taken together, and so interpreted as to give effect to every section and clause if practicable, and to carry out the prevailing principle that if different portions *seem* to conflict, the Courts must harmonize them if

it can be done consistently. *McPherson vs. Leonard,* 29 *Md.,* 389; *Groome vs. Gwinn,* 43 *Md.,* 624.

The general rule established by section 13 of Article 2, of the Constitution, and its manifest intention was that all the officers included in that section were to have a two years' tenure and *no more,* except in such cases where the new officers did not qualify at the beginning of the term; in which case the old officers held over until they did, but *no longer.* It has been repeatedly decided by this Court that the qualification of the successor ends the term of the old officer. As Bayne is the admitted *successor* of Dyer, and has qualified according to law, the term of Dyer is at an end. *State vs. Wayman,* 2 *Gill & Johns.,* 278; *Jump vs. Spence,* 28 *Md.,* 11; *Brooke vs. Widdicombe,* 39 *Md.,* 402, 403; *McBlair vs. Bond,* 41 *Md.,* 155.

The term of Dyer being ended, either Bayne is entitled to possession of the office, or there is a vacancy. But if the latter, the office must continue vacant until the first Monday of March, 1881, as the same terms used in section 13, would apply as well to the appointee of the Governor as to Bayne. The respondent could make the *same defence* to the appointee of the Governor, (should it be held that there is a vacancy to be filled by the Governor, under section 11 of Article 2,) as he does to Bayne. He could say that the appointee was only entitled on the 1st of March, *next ensuing* his appointment, which would be March, 1881. But it is the evident intention of the Constitution to provide against a hiatus in any office, and it has carefully provided against any such contingency in sections 11, 13 and 14 of Article 2. The logical result of the construction contended for by the appellants would be that unless the appointment was made before the time fixed as the *beginning of the term,* the appointee cannot take until the same day of the same month again occuring. This applies to all officers mentioned in section 13, as well as the Inspectors.

But all difficulty is removed from this 13th section of Article 2, if we apply to it the well known rules of construction. The time therein mentioned is directory only and not mandatory. No better rule can be found than has already been laid down by this Court. Speaking in reference to statutes, the Court says: " they are to be regarded as directory merely unless, from the nature of the act to be performed, or the language employed in the statute, it *plainly* appears that the designation of time was intended as a limitation of the power of the officers." There is no limitation anywhere upon the power of the Senate to confirm, or the power of the Governor to commission, or the power of the Inspector to act. The only limitation whatever, is that imposed by the Act of Assembly, which provides that any officer who does not qualify within thirty days from the time of the reception of his commission shall be presumed to have refused to accept the office. The obvious intention of the clause relating to Tobacco Inspectors is that they should go into office about the first of the spring, because the tobacco trade beigns with that period. But it was not intended that unless they went into office on the very day (1st Monday of March,) the length of the term of office should be changed and the old Inspectors have a term of three years and the new of only one. The object of the clause was for the benefit of the tobacco trade, and for that purpose the Senate was at least *impliedly directed* (but not commanded) to act early on these nominations, but no penalty or forfeiture was laid upon any one as a consequence of their delay. If the Inspector be appointed *before* the first Monday of March, he is allowed to delay his acceptance for thirty days which would bring the time of his entry into the office to about the first Monday in April; what possible practical difference can it make if the Senate should delay his confirmation for thirty days? These appointments are both by the Constitution and laws.

biennial, and the *terms* are computed to begin on the first
Monday of March, and to run for two years from that
date, but the Inspector is not compelled to go into office
on the day his term begins. His pay begins with his
actual service, and all he loses by delay is a portion of his
salary. The precise time is not of the essence of the law
of inspections, and there is no appreciable difference in fact
as far as the proper discharge of the duties of the office
is concerned between beginning them on the first Monday
or the first Tuesday of March, and yet, if the theory of
the appellants be correct, an Inspector who is commis-
sioned on the first Monday is entitled at once, while he
who is one day later has to wait a year. One of the old
Inspectors (for Warehouse No. 5) was re-appointed. He
accepted, qualified and gave a new bond, &c. Which of
his bonds is now liable? If he had not qualified under
his new commission within thirty days he would have
been presumed to have declined it. That the time is
directory and not mandatory, see *McPherson vs. Leon-
ard*, 29 *Md.*, 386–89; *Webster vs. County Commissioners*,
29 *Md.*, 522–3–4; *Horner's Case*, 34 *Md.*, 574.

ALVEY, J., delivered the opinion of the Court.

This is an application for the writ of mandamus, and
the question for decision arises upon demurrer to the
answer of the defendant.

The defendant was duly appointed to and held the
office of Tobacco Inspector, in the State Tobacco Ware-
house No. 1, in the City of Baltimore, from the first
Monday of March, 1878; and on the 24th day of Febru-
ary last, and within fifty days from the commencement
of the last session of the Legislature, the Governor
nominated, and sent to the Senate for the advice and con-
sent of that body, the name of the plaintiff, as the suc-
cessor of the defendant in office, as required by the Con-
stitution, Art. 2, sec. 13. The Senate did not act upon

Dyer *vs.* Bayne.

this nomination until the 5th of April, when it was confirmed. The Governor issued the commission to the plaintiff on the 12th of April, 1880, whereby he is declared to be appointed and commissioned to the office of Inspector in Warehouse No. 1 for the term of two years, from the first Monday of March, 1880. The commission was duly accepted, and the plaintiff thereupon gave bond, and took the oath of office, as required by law; and, on the 17th of April, 1880, made formal demand of the defendant for the surrender of the Tobacco Warehouse No. 1, together with all the books, &c., but which demand was refused by the defendant, who is still in possession, and hence the application for the writ of mandamus by the plaintiff.

The defendant by his answer, and also in argument, takes the position that inasmuch as the Senate did not act upon the Governor's nomination of the plaintiff until after the first Monday of March, 1880, the term of office for which the plaintiff has been appointed does not, by the terms of the Constitution, commence until the first Monday of March, 1881, that being the first Monday of March next ensuing the *appointment,* according to the construction contended for by the defendant. And as he is entitled to hold over until his successor is duly qualified, and can rightfully enter into the possession of the office, he contends that he is entitled to hold over until the first Monday of March, 1881; and thus hold for three years instead of two. And whether this contention be well founded or not is the question for decision, and that depends upon the proper construction of the 13th sec. of the 2nd Art. of the Constitution. That section is as follows:

"All civil officers appointed by the Governor and Senate, shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases

otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless removed from office) and until their successors, respectively, qualify according to law; but the term of office of the Inspectors of Tobacco shall commence on the first Monday of March next ensuing their appointment."

It is not difficult to discover the main and leading purposes of this section. They were two; and the first was to limit a time within which the Governor should make his nominations to the Senate; and the second was to declare and make uniform the term of office for the officers to be nominated; and the particular day for the commencement of the term was but incidental to this last mentioned primary purpose. The term was declared to be two years, and the appointments are required to be made biennially, during the regular sessions of each Legislature. It was manifestly the purpose of the framers of the Constitution that the term of office should commence and terminate with reference to the end of each regular biennial session of the Legislature, and that for obvious reasons. It was certainly never contemplated that the term of these offices, or any of them, should begin or terminate, as the defendant contends it may, at a time in the intervening year between the regular sessions of the Legislature. Indeed, there is no clause or provision in the Constitution that gives the slightest countenance to the idea that the term could so commence and terminate. On the contrary, it would contravene the whole scheme and spirit of the instrument. The nomination and confirmation of the plaintiff, therefore, was intended for the term of office commencing with the first Monday of March, 1880. That intention, however, must be disregarded, according to the contention of the defendant, and we are to be confined to the terms of the section of the Constitution which declare that the term of office of

the Tobacco Inspectors "shall commence on the first Monday of March next ensuing the appointment," regardless of the consequences that such a construction may produce. But are we compelled to adopt this strong proposition, in the face of the manifest general intention of the framers of the instrument, and regardless of the discordant results that would be produced in its general operation? To adopt the construction contended for by the defendant, several anomalous results would be produced, which never could have been contemplated by the authors of the Constitution.

In the first place, that construction would secure to the defendant the enjoyment of a term of office for three years, when the term for which he was appointed is declared by the Constitution in express terms to be only for two; and that holding is claimed to be, not simply, in the terms of the Constitution, until his successor shall be duly appointed, and qualifies, but for a definite term, that is to say, until the first Monday of March, 1881; notwithstanding his successor has been duly appointed and qualified, and has demanded the possession of the office.

In the second place, if the present incumbent were to resign, or die, or become disqualified for any cause, before the first Monday of March, 1881, the defendant's position, to be consistent, compels him to contend that, in such event, it would become necessary for the Governor to make a new appointment to fill the vacancy, until the first Monday of March, 1881; notwithstanding the plaintiff had been long previously duly appointed, commissioned, and qualified for the office. And yet, if we look to sec. 11th of Art 2nd of the Constitution, which authorizes the Governor to fill vacancies occurring during the recess of the Senate, we find that the commission of the party thus appointed is to continue in force until the *end* of the next session of the Legislature, or until some other

person is duly appointed, whichever shall first occur; "and the nomination of the person thus appointed during the recess, or, of some other person in his place, *shall* be made to the Senate within thirty days after the *next* meeting of the Legislature." If, therefore, the defendant were to die or resign during the term for which he now claims to hold, and the Governor were to appoint to fill a vacancy, as the defendant contends he would have to do, there would be a palpable conflict, upon the defendant's construction, between the incumbent, appointed to fill the vacancy, and the plaintiff, upon the arrival of the first Monday of March, 1881, when, as it is contended, the term of office of the latter would begin. The question then would be, which provision of the Constitution should be modified by construction or made to yield its literal force.

Then, again, if the term of office for which the plaintiff has been appointed should not commence until the first Monday of March, 1881, either one of two things must result; either the term must be reduced to one year, notwithstanding the Constitution declares that it shall be for two, or the two years term must be allowed to terminate on the first Monday of March, 1883,—a year in which there will be no regular session of the Legislature. In this latter alternative, the Governor, with the concurrence of the Senate, would be required to appoint a successor to the office a year in advance of the expiration of the current term, and so on repeatedly; and to do this, there is no warrant whatever to be found in any part of the Constitution.

A construction, then, that leads to such anomalous consequences cannot be sound, nor can it be justified, upon any reasonable principle of construction, though the letter of a particular provision of the Constitution would seem to require it. We must look to the Constitution as a whole, and adopt such construction of its parts as will maintain in force and harmonious operation the main and

Dyer *vs.* Bayne.

leading provisions of the instrument. And looking there-
fore at the principal objects of the 13th section of the 2nd
Article of the Constitution, and seeing the necessity for
conforming the construction of it to what is imperatively
required for the harmonious and consistent operation of
the instrument, it would seem to be clear that the words,
" shall commence on the first Monday of March next
ensuing their appointment," must be restrained, and their
literal import to some extent qualified. In some particu-
lar cases no other mode of construction would relieve of
embarrassment, and avoid inconsistent and discordant
results. Suppose, for instance, that the Senate, instead of
confirming had rejected the plaintiff after the first
Monday in March ; or that he had at once declined the
office after that time ; and the Governor had thereupon
made a new nomination to the Senate, which had been
duly confirmed ; could it be reasonably contended that, in
such cases, the new appointee would not be entitled to the
office at once, upon due qualification, but that he would
have to wait a year before he could be installed, owing to
an ordinary circumstance that may attend any nomina-
tion ; and this, notwithstanding the existing incumbent
had held his full term, and was only allowed to hold over
until his successor was duly appointed and qualified?
Such contention, we think, could in reason find no sup-
port, and yet that case in no manner differs from what is
contended for by the defendant. His contention is entirely
founded upon the idea that the appointment did not pre-
cede the first Monday of March, occurring during the period
assigned for the session of the Legislature; and that
would be the case equally in the instances supposed as in
the case now before us.

But, while we regard the view of the subject already
stated as a full answer to the contention of the defendant,
there is another view quite conclusive of the case.

The Governor made the nomination of the plaintiff
within the fifty days, and before the first Monday of

Dyer *vs.* Bayne.

March, 1880. The Senate was under no restriction as to time within which it should act upon that nomination; and having confirmed the nomination during the regular session, the appointment was complete from the time of such confirmation. *United States vs. Bradley,* 10 *Pet.,* 364. The Governor had no discretionary power over the appointment after confirmation, nor had he power to withhold the commission; for the issuing of the commission was a mere ministerial act. The efficient and only discretionary act of the Governor in making the appointment, was in making the nomination; and the Senate having no other power over the nomination than to concur or non-concur in it, the act of the Governor became complete and effective with the concurrence of the Senate, and it related back to the time of the nomination. The act of the Senate, and the subsequent ministerial act of the Governor in issuing the commission, both related to the principal act of the Governor in making the nomination; the commission being evidence only of the appointment. And the appointment being thus allowed to speak as from the time of the principal act done in making it, all difficulty upon the terms of the Constitution is at once removed. There can be no good reason why the principle of relation should not be applied in a case like the present, as it is constantly applied in many others, for the advancement of justice, and to give full and complete effect to legal proceedings. We think it should be so applied.

It therefore follows that the order of the Court below, awarding the writ of mandamus, must be affirmed. And in the several cases, Nos. 19, 20, and 21, being the cases of *Hilton vs. Somerville, Owens vs. Hawkins,* and *Carpenter vs. Hayden,* as they stand upon the docket of this Court, the facts in those cases being in all respects the same as in the case just considered, the several orders therein, awarding the writ of mandamus, must likewise be affirmed.

*Orders affirmed.*

(Decided 18th June, 1880.)