## McGEE, County Treas., et al. v. SCHOOL DIST. NO. 196, COMANCHE COUNTY.

No. 9612—Opinion Filed March 22, 1921.

Rehearing Denied May 17, 1921.

(Syllabus.)

1. **Mandamus—School District Funds—Payment by County Treasurer.**

Mandamus is the proper remedy to compel a county treasurer to pay to a school district money due it from another school district when such money has been collected by a tax levied for said purpose and the money is in the hands of such county treasurer.

2. **Schools and School Districts—Amount in County Treasury Owed One District by Another—Evidence.**

On an examination of the evidence, held, that it disclosed there was sufficient money in the hands of the county treasurer in the sinking fund of school district No. 67 to pay the amount due school district No. 196; that this money was raised by tax levied on the property in school district No. 67 for the purpose of paying school district No. 196 the amount found, by the county superintendent. to be due from school district No. 67 to school district No. 196.

3. **Same—Division of Districts and Property—Validity of Statutes.**

Section 5, art. 3, chap. 219, Session Laws of 1913, providing for the division of school districts and the equitable determination of the value of the schoolhouses and other property and the proportion justly due to the new district, does not conflict with sections 9 and 10 of art. 10 of the Constitution.

4. **Mandamus — Action by School District Board Against County Treasurer for Fund—Defenses—Validity of Tax Levy.**

When a school board in making out its estimated needs does not include any estimate for the sinking fund to provide for the payment of either interest on bonds or money due to a new school district which was formerly a part of the old district, but a division of the district having been made under the provisions of section 5, art. 3, chap. 219, Session Laws of 1913, and the county excise board inserts in said estimated needs a levy to provide funds for the payment of these items and the tax levied under this action of the excise board and without any authority from the school district board is paid voluntarily and without protest by the taxpayers and so received by the county treasurer, in an action in mandamus instituted by the school district entitled to receive said money to compel such county treasurer to pay said money so levied and collected, the county treasurer cannot set up as a defense the invalidity of such levy.

Error from District Court, Comanche County; Cham Jones, Judge.

Action by School District No. 196, Comanche County, against Ben McGee, as County Treasurer of Comanche County, in mandamus to compel the said County Treasurer to turn over to the plaintiff $858.29 in the hands of such treasurer; School District No. 67 being later made a party defendant. On a trial of the case to the court without a jury, the peremptory writ of mandamus was awarded. Defendants appeal. Affirmed.

S. I. McElhoes, for plaintiffs in error.

W. C. Stevens, for defendant in error.

MILLER, J. This action was commenced November 25, 1916, in the district court of Comanche county, by school district No. 196, Comanche county, as a municipal corporation. against Joe L. Porter, as county treasurer of Comanche county, and is a proceeding to mandamus the said county treasurer to compel him to turn over to the said plaintiff, school district No. 196, $858.29, held by the said county treasurer as tax collected and received by the said county treasurer from school district No. 67, Comanche county, Oklahoma. Since the commencement of this action, Ben McGee has succeeded the said Joe L. Porter as such county treasurer.

The alternative writ was duly issued on December 1, 1916. Answer was filed on the alternative writ and an amended answer was afterwards filed. The trial of the case resulted in a judgment of the court that the peremptory writ of mandamus be issued against the county treasurer in accordance with the alternative writ theretofore issued.

The county treasurer, defendant below, filed a motion for a new trial, which was overruled, exceptions duly allowed, and notice of appeal given, as required by law, and this appeal perfected.

School district No. 196, plaintiff below, appears as defendant in error here and the county treasurer of Comanche county, defendant below, appears as plaintiff in error in this court, together with school district No. 67, which had been made a party defendant.

Late in the year of 1914, school district No. 67 of Comanche county, Oklahoma, was by order of the superintendent of public instruction of said county, divided and two districts created. Nine square miles of territory was taken from said school district No. 67 and a new district created, being school district No. 196.

Thereafter, and in accordance with section 5, art. 3, chap. 219, Session Laws of 1913, the county superintendent proceeded to equitably determine the proportion of the present value of schoolhouses and other property justly due to said new district. Said section reads as follows:

"When a new district is formed, in whole or in part, from one or more districts possessing a schoolhouse or entitled to other property, the county superintendent of public instruction, at the time of forming such new district, shall equitably determine the proportion of the present value of such schoolhouses or other property justly due to said new district. Such proportion, when ascertained, shall be levied upon the property of the district retaining the schoolhouse, or other property, and shall be collected in the same manner as if the same had been authorized by a vote of the district for building a schoolhouse, and, when collected, shall be paid to the new district to be applied towards procuring a schoolhouse for such district."

The evidence discloses that all of the property belonging to original school district No. 67 was retained as the property of school district No. 67 as created and its boundaries defined after making the division; that no part of the property was in the new district created as school district No. 196. This is not controverted by plaintiff in error McGee.

The amount fixed by the county superintendent as being due from said district No. 67 to the defendant in error was $858.29.

The plaintiff in error says in the beginning of his brief:

"We are not setting out and discussing the pleadings, for the reason that in all past stages of the case no issues as to their sufficiency have been raised. Hence we will go directly to the evidence."

The plaintiff in error raises and discusses only three questions in his brief:

First. That the evidence is insufficient to support the writ in that it fails to show that the county treasurer had any money on hand with which to comply with the writ if it should be granted.

Second. That the act of the Legislature, section 5, art. 3, chap. 219, Session Laws of 1913, supra, is unconstitutional.

Third. That the school board of district No. 67 did not include in its estimate for the expenses of 1915, the amount due school district No. 196. and that the excise board did not have authority to increase the estimate by including a levy to provide this fund.

We will dispose of these questions in the order herein named.

First: Plaintiff in error contends that the evidence is insufficient to support the writ

of mandamus in that it fails to show any funds in the hands of the county treasurer to the credit of school district No. 67 with whch to pay the claim of school district No. 196. The evidence discloses the following facts:

Prior to September 17, 1914, school district No. 67 was an existing municipality in the county of Comanche, Oklahoma. On September 17, 1914, a petition was filed with the county superintendent of Comanche county, Oklahoma. This petition prayed for the detaching of a certain area of school district No. 67 and creating an entirely new district therefrom. Notice was given that such petition would be heard on the 10th day of October, 1914. Proof was made that these notices were served. Thereafter the county superintendent issued the following notice:

"Ten Days' Notice of the Alteration of School District Boundaries.

"Notice is hereby given that on the 29th day of December, 1914, I changed the boundaries of school district No. 67, township No. 1 S., range 1, 12 W. I. M., county of Comanche, state of Oklahoma, as follows:

"1. By detaching all of sections one, two, three, ten, eleven, twelve, thirteen, fourteen, fifteen, all in township one south, range twelve west I. M.

"And that if no appeal be taken within ten days of the posting of this notice, I will complete said change.

"Dated this 29th day of December, 1914.

"Jennett S. Crosby, County Superintendent of Public Instruction.

"Posted by me this 30th day of December, 1914, in five public places of district No. 67, township No. 1 south, range No. 12 W. I. M. (4:30 p. m. time.)"

Thereafter, the county superintendent issued the following order, which the evidence shows was a part of the records in the office of the county superintendent of Comanche county:

"Lawton, Oklahoma, January 14, 1915.

"Petition of September 17, 1914, from more than one-third of the legal voters of attached territory to Geronimo, Dist. No. 67, viz: All' of sections one, two, three, ten, eleven, twelve, thirteen, fourteen, fifteen, all in township one south, range twelve west, I. M., is hereby acknowledged.

"Petition asks that the above described territory be detached from Geronimo. Dist. No. 67, and formed into a new district. Twenty day notice of proposed alteration of school district boundaries posted September 19, 1914, by clerk of dist. No. 67. Ten day notice of change posted by clerk of dist. No. 67, December 30, 1914.

"January 12, 1915, petition granted and division of district completed.

"(Seal)     Jennett S. Crosby,

"County Superintendent, Comanche County."

Plaintiff in error in his brief makes reference to the evidence as above stated, and then sets out in his brief the ten-day notice and the order of January 14, 1915, and then says:

"It will be observed that up to this time nothing has been issued imposing any charges against school district No. 67. The order thus signed is that the 'division of district completed.' We believe any reasonable person would be led to believe that by this order of January 14, 1915, the final act had been done and the matter closed. It is absolutely impossible to find from any order anything that would lead any person to believe that anything else or any other action would be taken against school district No. 67."

It will be observed that plaintiff in error does not question the sufficiency or regularity of the proceedings for the division of the district, and these questions are not raised by plaintiff in error, and we are not passing on that, as, under the rules of this court, counsel is deemed to have waived the sufficiency and regularity of all these proceedings. Thereafter, a notice of a special school meeting was called by the county superintendent and the notices posted by Mary E. McCarthy, clerk of school district No. 67. It reads as follows:

"Notice of Special School Meeting.

"A special meeting of school district No. 196, township No. 1 south, range No. 1, 12 W. I. M., county of Comanche, state of Oklahoma, will be held at R. H. Stevenson, S. E. 1/4, sec. 10, I. S., 12 W., on the 30th day of March, A. D. 1915, at three o'clock p. m.

"(Signed) Jennett S. Crosby,

"County Superintendent.

"Posted this 17th day of March, 1915. Purpose to elect a director whose term shall expire in 1917, a clerk whose term shall expire in 1916, and a member whose term shall expire in 1915.

"Mary E. McCarthy, Clerk of Dist. 67."

The county superintendent thereafter made the following findings and order as to the equitable division of the property of school district No. 67:

"Lawton, Oklahoma, Sept. 1, 1915.

"Division of Property for School District No. 67 and No. 196.

"Section 37. Division of Property Among Divided Districts. When a new district is formed, in whole or in part, from one or more districts, possessing a schoolhouse or entitled to other property, the county superintendent of public instruction, at the time of forming such new district, shall equitably determine the proportion of the present value of such schoolhouses or other property just-

ly due to said new district. Such proportion, when ascertained, shall be levied upon the property of the district retaining the schoolhouse, or other property, and shall be collected in the same manner as if same had been authorized by a vote of the district for building a schoolhouse, and when collected, shall be paid to the new district to be applied towards procuring a schoolhouse for such district. (5).

"According to the tax rolls of Comanche county the taxpayers living in the territory which was attached to Geronimo, district No. 67, and which is now district No. 196, have paid in real and personal taxes for the years 1909, 1910, 1911, 1912, 1913, 1914, a total of $3,280.64. During these years the average levy for general fund has been 5.08 mills The average levy for sinking fund has been 1.8 mills. The total average levy has been 6.88 mills. 1.8 is the part paid to the sinking fund. 1.8 of $3,280.64 is $858.29.

"We consider $858.29 to be the amount justly due said new district.

"(Seal)        Jennett S. Crosby,

"County Superintendent."

The estimates of expenses of school district No. 67 for the fiscal year ending June 30, 1915, was then introduced, and is as follows:

"Exhibit Nine.

"School District Estimate.

"Report of the board of school district No. 67, to county excise board of Comanche county for the estimated expenses for the fiscal year ending June 30, 1915.

"General Fund.
Liabilities.

| | |
|---|---:|
| Salary of teacher | 1980 |
| Number of teachers | 4 |
| Building | 560 |
| Repairs | 125 |
| Furniture | 50 |
| Library | 60 |
| Fuel and crayon | 60 |
| Janitor | 90 |
| Other items | 10 |
| | 2875.00 |

Resources.

| | |
|---|---:|
| Cash on hands | 174.29 |
| State apportionment | 230.00 |
| Tuition | |
| Other sources | |

"Sinking Fund.

| For what purpose issued. | | | Date issued. |
|---|---|---|---|
| Funding | 10-29-08 | | 7-1-28 |
| Date due | Rate Amt. | | Amt. Raise |
| | 6% | $3.000 | $180 |

"We the trustees of school district No.—— do hereby certify that the above estimates were made by the school board at a meeting held on the 5th day of May, 1914.

"J. F. Cape, Director. A. O. Dickson, Clerk. Ove Harris, Member.

"State of Oklahoma, County of Comanche.

"I, A. Dickson, clerk of the school district No. 67, Comanche county, Oklahoma, being duly sworn on his oath, deposes and says

that by authority of the school board of said district, he on the 3rd day of July, 1914, posted in five public places within said district a true and correct copy of the within and foregoing estimates of expenses for the fiscal year ending June 30, 1915.

"A. O. Dickson, Clerk of Dist. No. 67.

"Subscribed and sworn to before me this 7th day of June, 1914.

"Sandy W. Gregory.

"H. N. Whalin, Chairman Excise Board.

"Sandy W. Gregory, Secretary of Excise Board.      (Seal)"

Endorsements on back of exhibit nine are as follows, to wit:

"Filed this 7th day of July, 1914.

"Sandy W. Gregory,
"Secretary Excise Board.

"Levies, General fund, five mills.

"Sinking fund, 1.25 mills.

"Valuation      $304,016.00

"Estimates      2,034.00"

Next was introduced in evidence the financial statement of school district No. 67 for the year ending June 30, 1915, the estimated needs of said district for the year ending June 30, 1916, the action of the school district board and the excise board thereon. Attached thereto and as a part thereof is a certificate showing a vote of school district No. 67 on a proposed excess levy of 2 mills, which is as follows:

"Exhibit Ten.

"School District No. 67, of the County of Comanche, State of Oklahoma. Financial statement for fiscal year beginning July 1st, 1914, and ending June 30th, 1915; and estimated needs for current expenses for the fiscal year beginning July 1st, 1915, and ending June 30th, 1916, as required by sections 7378, chapter 72, Revised Laws of Oklahoma, 1910.

Financial Statement.

"A"      Cash Account.

1. Cash on hand July 1st, 1915, to credit of general fund _____$ 184.63

Receipts.

2. Amount received from current taxes____ 1985.75
3. Amount received from back taxes_____
4. Amount received from state apportionment _____ 235.40
5. Amount received from county apportionment _____ 21.40

Total balance and receipts_____$2427.18

Disbursements.

Total disbursements _____$2085.44
13. Balance on hand _____

"B"      Tax Levy Account.

1. Valuation current year $3040.16, rate general levy 5 mills.
2. Total taxes levied for fiscal year ending June 30, 1915 (compute amount on basis of valuation and rate of levy shown in line 1—"B")_____$1520.08
3. Total amount received from county treasurer to June 30th, 1915 (enter here amount shown in line 2—"A") 1985.75
4. Balance in process of collection for

fiscal year ending June 30th, 1915____ 226.74

"C"      Estimate Account.

4. Amount of approved estimate for current expense for fiscal year ending June 30, 1915 (enter here amount of estimate approved by county excise board for year named) _____ 2034.00
5. Total warrants issued against above estimate (enter here amount from warrants stub) _____ 2034.28

"D"      Warrant Account.

3. Warrants issued against estimate for fiscal year ending June 30th, 1915 (enter here amount shown in line 5—"C")

Total warrants _____ 2034.28
5. Warrants paid (enter here amount shown in line 10—"A")
6. Balance, warrants outstanding June 30th, 1915 _____ 239.50

Summary.

"E"      Assets.

1. Cash on hand June 30th, 1915 (enter here amount shown in line 13—"A")_ 371.74

Liabilities.

4. Warrants outstanding June 30th, 1915, enter here amount shown in line 6—"D" _____ 259.55

"F"      Estimated Needs.

1. For salary three teachers___$1665.00
2. for repairs _____ 25.00
For fuel _____ 60.00
7. For furniture and supplies 10.00
10. For janitors _____ 90.00

Total estimated needs_____1850.00 1400.49 009.75

Estimated amount that will be received from the following sources:

15. Tuition and other sources_____ $100.00

"Approved Estimate and Levy.

"(These blanks to be filled by excise board)

"We the undersigned members of the excise board of Comanche county, state of Oklahoma, do hereby certify that we have examined the foregoing estimated needs of school district No. 67, and have approved the said estimates for the amounts and made levies therefor as follows:

"1. General fund, approved estimate 1400.49, rate of levy mills      5.

"2. Sinking fund, approved estimate 1108. rate of levy mills      4.75

"3. Total levy      rate of levy mills      9.75

"We further certify that we have ascertained the assessed valuation of said school district to be $23,110, and do hereby order that the levies herein above enumerated aggregating 9.75 mills extended upon the tax rolls.

"Dated this 10 day of Sept., 1915.

"R. J. Ray, County Judge.

"T. B. Orr, County Attorney. Charla Critcher, County Clerk.

"Jennett S. Crosby, County Superintendent.

"H."      "Certificate.

"We the undersigned directors of school district No. 67 of the county of Comanche, state of Oklahoma, do hereby certify that the above and foregoing statement of the fiscal condition of school district No. 67, county and state aforesaid, is true and correct, and that the amounts enumerated in the statement of estimated needs are reasonably neces-

sary for current expenses in the proper conduct of the affairs of said school district.

"We further certify that the above and foregoing is a true and correct copy of the statement and estimates prepared and made at a meeting held on the first Monday in July, 1915, the same being the 5th day of July, 1915.

"J. L. Sawyer, Director.
"Mary E. McCarthy, Clerk.
"W. Hubbs, Member.
"Affidavit.

"State of Oklahoma, County of Comanche, ss.

"Personally appeared before me, the undersigned, notary public Mary E. McCarthy, clerk of school district No. 67, who being first duly sworn according to law deposes and says: that he complied with the law by having the within estimate posted in five public places in district No. 67, there being no newspaper published in said school district.

"Mary E. McCarthy.

"Subscribed and sworn to before me this 8th day of July, 1915.

"(Seal)    Geo. C. Stablin, Notary Public.
"My commission expires May 1st, 1916.

"To the county excise board, county of Comanche, state of Oklahoma.

"Gentlemen:

"Pursuant to the requirements of section 7378, chapter 72, Revised Laws of Oklahoma, 1910, we submit herewith, for your consideration the within and foregoing statement of the fiscal condition of school district No. 67 of the county of Comanche, state of Oklahoma, for the fiscal year beginning July 1st, 1914, and ending June 30th, 1915, together with an itemized statement of the estimated needs of said school district for the fiscal year beginning July 1st, 1915, and ending June 30th, 1916.

"Dated at Geronimo, this the 8th day of July, 1915.

"J. L. Sawyer, Director.
"Mary E. McCarthy, Clerk.
"H. E. Hubbs, Member."

"Certificate of Excess Levy.

"State of Oklahoma, Comanche County, ss.

"We, the undersigned, J. Lon Sawyer, W. E. Hubbs, and Mary E. McCarthy, the duly qualified and acting school district board of school district No. 67 of Comanche county, Oklahoma, do hereby certify that the annual meeting and election of the qualified voters of said district, duly advertised according to law held at Geronimo on the 27th day of July, 1915, there was submitted to the school electors of said district and voted upon by them the question of whether an excess levy of 2 mills should be made on behalf of said district for the next ensuing fiscal year. That in said election there were cast 88 votes. Of

said votes 38 were cast for the aforesaid levy and 50 were cast against it making a majority of 12 votes not in favor of said 2 mills. This certificate is attached to and made a part of the annual estimate of said school district board to the honorable excise board of Comanche county, Oklahoma, under the provisions of House Bill No. 501, approved April 5, 1915, carrying an emergency.

"In witness whereof, we have hereunto subscribed our names and affixed the official seal of said school district this 27th day of July, 1915.

"J. L. Sawyer, Director.
"W. E. Hubbs, Member.
"Attest: Mary E. McCarthy, Clerk.
"(Seal)."

Under date of February 15, 1916, the county superintendent wrote Joe L. Porter. county treasurer, the following letter which was introduced in evidence:

"Lawton, Oklahoma, Feb. 15, 1916.

"Mr. Joe L. Porter, County Treasurer, Comanche County, Lawton, Oklahoma.

"Dear Sir: In the division of the property of school district No. 67, and No. 196, it having been ascertained that district No. 196 is equitably entitled to $858.29, you are hereby authorized to transfer said amount which has been levied and collected upon the property of district No. 67 to the credit of said district No. 196. Very truly yours,

"Jennett S. Crosby, County Superintendent.
"(Seal)."

Mrs. Jennett S. Crosby, who was the county superintendent of schools and a member of the excise board during the years 1914, 1915, and 1916, testified as follows:

"Q. By virtue of your office were you a member of the excise board for the year 1915? A. Yes, sir. Q. Do you know whether or not the excise board for that year considered the levy for the purpose of making payment of that amount which you say you found due to district No. 196? Q. Have you before you now the determination of the excise board as made on September 10th which included this particular fund in controversy? A. Yes, sir. Q. Tell the court in what item of the estimate you have before you that was included. A. It was included in the sinking fund. Q. The paper which you now have before you was signed by R. J. Ray, county judge, T. B. Orr, county attorney, Mrs. Critcher, county clerk, and yourself as county superintendent? A. Yes sir. Q. You are familiar with the signature of all these veople. A. Yes, sir. Q. And those are their signatures appended thereto? A. Yes, sir. Q. I will ask you if at any time you advised the county treasurer of the amount of that sinking fund which was due to school district No. 196 from which was due to school district No. 196 from the levy made for school district No. 67? A. Yes, sir; he was authorized to transfer it. Q. Is the pa-

per marked 'exhibit seven' the paper to which you refer. A. Yes, sir. * * * Q. What you did undertake to do was to follow the command of the statute requiring you to determine what amount was equitably due from district 67 to district 196? A. Yes, sir; if you will allow me to refer to the order I made for the transfer of that fund I will show you exactly that I did do. On the settlement between the two districts this is the section of the statute I followed: 'When a new district formed'—By Mr. McElhoes: We object to that as a matter of law. A. This is a part of the record, I have it pasted on here and it shows exactly what I did do. By the Court: It has been introduced in evidence and will show for itself what it is. The objection is sustained. Q. You may refresh your recollection from anything you can and tell the judge what you did do and what you found? A. Well, we endeavored to determine, as it says, equitably, the proportion of the value of the property that was due the district, and then it says it shall be levied upon the property of the district retaining the schoolhouse and collected in the same manner as though authorized by a vote by the people. Q. You did take into consideration the entire standing of both districts and also the taxes that had been collected and levied from time to time in district No. 196 and also 67? A. Yes, sir; I compared the value of the districts for different years and the proportion paid by district 196 was about one-third and 67 about two-thirds; it ran that way for seven or eight years. Q. So you used the best judgment you possessed and made the determination? A. Yes, sir; in as equitable a manner as I could. Q. And no appeal was taken from that determination? A. No, sir; and no protest was ever offered as to the division of the district; the twenty-day notice was given and then the ten-day notice that the alteration and change was to be consummated, and no protest or appeal had been offered. Q. For our convenience in argument, did you ascertain the rate of levy for 1914, 1915, and 1916 of the sinking fund of district No. 67? A. Yes, sir. Q. Give those to us. By Mr. McElhoes: I have no objection to what she says about it, but I don't want to be bound by it. A. I can get the record from the excise board. For the year 1914, it was 1.25 mills for the sinking fund. For 1915, it was 4.75 mills; that is the year the settlement was made, and for the next year it was 1.40 for the sinking fund."

John Thompson, an officer of school district No. 196, testified as follows:

"Q. You know the defendant, Joe L. Porter, county treasurer? A. Yes, sir. Q. You were an officer of school district No. 196 prior to the bringing of this suit? A. Yes, sir. Q. Did you have a conversation with Joe L. Porter, the defendant, just before you brought the suit relative to the amount of money in controversy? A. Yes, sir. Q. Did you have a conversation with him relative to whether he had that amount of money on hand before this suit was brought? Q. Tell the entire conversation? A. We went to Mr. Porter and asked him to turn over the money we understood was there to build the schoolhouse and he said the money was there but he could not see his way clear to pay it. Q. Did he tell you in what fund it was? A. Yes, sir; said it had been placed in the sinking fund.".

Ben McGee, who had succeeded Joe L. Porter as county treasurer of Comanche county, Oklahoma, testified as follows:

"Q. You are the county treasurer of Comanche county? A. Yes, sir. Q. Have you, since the former hearing of this case, had occasion to make a computation of the sinking fund of school district No. 67? A. Yes, sir. Q. For what period of times does that cover? A. July 1st, 1914, to July 1st, 1917. Q. Will you tell the court the total amount collected for the sinking fund of school district No. 67 during that period? A. $1,847.74. Q. Tell the court what the balance is now on hand in that sinking fund? A. Not the exact figures; it is about $1,300.00. I haven't the exact figures. Q. I will ask you to get the exact amount if you can on hand at the present time? A. The amount on hand today is $947.24."

All of this evidence is undisputed, and the treasurer's records show $947.24 in the sinking fund. The claim of school district No. 196 is $858.29. It is evident there is more than enough in the sinking fund to pay the claim of school district No. 196.

The testimony of John Thompson is that Joe L. Porter, former county treasurer of Comanche county, told him there was money in the sinking fund to pay this, but he did not see his way clear to pay it.

Plaintiff in error then states in his brief:

"We call the court's attention to Exhibit 10, herein set out showing the estimate filed by the board for District No. 67. Nowhere does it provide among its estimated needs anything for this charge by the county superintendent. Nor could it have done so, because that charge was not in existence at the time the estimate was made. Exhibit 10 also shows that the excise board made a levy for a sinking fund. Not a word is said in the estimate by the school board about needing one cent for the sinking fund. Nor is there anything in the record showing any need for a sinking fund. Just where the county excise board could get any authority for making this levy does not appear in the record, nor in the estimate, and we have been unable to find any authority in law.

"In this whole record the only evidence of the need for a levy for sinking fund appears in Exhibit 9, where bonds in the sum of $3,000.00, issued October 29th, 1908, and maturing July 1st, 1928, and bearing 6 per

cent. are shown. These bonds are then 20-year bonds. This would require the raising of 5 per cent. for the principal and 6 per cent. for interest, making a total of 11 per cent., which on a principal of $3,000.00 is $330.00.

"Exhibit 10 shows the assessed valuation for 1915 and 1916 to be $233,110 and a levy of 4.75 mills which was made by the excise board provides an income of $1,107.27. And if we deduct the foregoing $330.00 necessary to take care of the bonds we have left $777.27. This assumes that all of the taxes were paid, and still we would not have enough money in any event to comply wth the court's order.

"But the point we are emphasizing is that the excise board made this levy without a single thing in the estimate to authorize it."

Counsel assumes the bonds would require the raising of 5 per cent. of the principal of $3.000. Exhibit 9 shows that the school district in 1914 asked for $180 in the sinking fund to provide 6 per cent. interest on $3,000. They did not ask for any 5 per cent. to apply on the principal, and counsel's assumption is not based upon the record in this case. He says the 4.75 mills levy made by the excise board would provide an income of $1,107.27. He assumes to deduct $330 from this amount, but under the record he could not deduct more than $180, and deducting $180, it leaves $927.27. The treasurer's records showed $947.24 and the treasurer testified that some of this was carried over from 1914.

The testimony of Mrs. Crosby, county superintendent, is that the excise board made the levy in 1915 to raise money to pay school district No. 196 and made it as a part of the sinking fund, her testimony being that the amount of levy for the sinking fund for 1914 was 1.25 mills; for 1915, it was 4.75 mills, and for 1916, it was 1.40 mills. She testifies that this increase for 1915 was to provide the fund for school district No. 67 to pay school district No. 196 the amount she had found as the equitable adjustment between the districts. It is evident from her testimony that approximately 3.50 mills was provided in the sinking fund for this expressed purpose. Therefore, we conclude that the evidence clearly sustains the findings and judgment of the trial court; in fact, it could not have found otherwise. There is not a failure of proof as contended for by plaintiff in error, and the authorities cited by him on failure of proof do not apply.

The next question is the constitutionality of section 5, art. 3, chap. 219, Session Laws of 1913:

"Section 5. When a new district is formed, in whole or in part, from one or more districts possessing a schoolhouse or entitled to other property, the county superintendent of public instruction, at the time of forming such new district, shall equitably determine' the proportion of the present value of such schoolhouses or other property justly due to said new district. Such proportion, when ascertained, shall be levied upon the property of the district retaining the schoolhouse, or other property, and shall be collected in the same manner as if the same had been authorized by a vote of the district for ʃuilding a schoolhouse and, when collected, shall be paid to the new district to be applied towards procuring a schoolhouse for such district."

"It is a cardinal rule in the construction of a Constitution that it is to be so interpreted as to permit ·the objects for which it was framed and adopted, and to this end the whole instrument is to be examined, with a view to ascertaining the meaning of each and every part. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060; Julliard ·v. Greenman, 110 U. S. 421, 4 Sup. Ct. 122, 28 L. Ed. 204; Stanford v. Magill, 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 773. The presumption and legal intendment is that each and every clause in a written Constitution has been inserted for some useful purpose, and therefore the instrument must be construed as a whole in order that its intent and general purpose may be ascertained. As a necessary result of this rule, it follows that, wherever it is possible to do so, each and every provision must be so construed that it shall harmonize with all others. without distorting the meaning of any of such provisions, to the end that the intent of the framers may be ascertained and carried out and effect given to the instrument as a whole. Wilcox v. People, 90 Ill. 186, 196; People ex rel. Jackson v. Potter. 47 N. Y. 375; Coffin v. Board of Election Com'rs, 97 Mich. 188, 56 N. W. 567, 21 L. R. A. 662; Hawkins v. Filkins, 24 Ark. 287; Marye v. Hart et al., 76 Cal. 291, 18 Pac. 325; Dyer v. Bayne, 54 Md. 87. If the maximum levy for state purposes fixed by section 9, art. 10, extends to all taxes, whether assessed according to section 8, art. 10, or imposed by the Legislature, pursuant either to sections 12, 13, or 22 of art. 10, then the tax in question, being in excess of the maximum levy for state purposes, cannot be sustained. But the language of section 9 does not, necessarily, authorize this conclusion, for it is expressly provided that 'except as herein otherwise provided,' the maximum levy shall be that provided for in said section. The office of an exception in a statute (alike applicable to a Constitution) is, generally speaking, to take or exclude from the operation of the statute certain things or subjects which would otherwise be included therein. Campbell v. Jackman, 140 Iowa, 475, 118 N. W. 755, 27 L. R. A. (N. S.) 288; Cassidy v. Royal Exchange Assur. of London, 99 Me. 399. 59 Atl. 549; State v. Barrett. 172 Ind. 169, 87 N. E. 7; Pabst Brewing Co. v. Milwaukee, 148 Wis. 582. 133 N. W. 1112; Rowell v. Janvrin, 151

N. Y. 60, 45 N. E. 398. There is nothing in the Constitution expressly giving to the counties and municipal subdivisions thereof the right to levy taxes on all property situated therein. We must assume that the framers of the Constitution, in conferring upon the state both the authority to provide for the levy collection of the specific taxes named in section 12, art. 10, as well as the power of the state to select its subjects of taxation and levy and collect its revenues independent of the counties, cities, and other municipal subdivisions thereof, acted with deliberation, and had in view some definite purpose. All property upon which the state may impose a tax is, of course, situated within one or more counties of the state, and hence the state must, in selecting its subjects of taxation, invade the territorial jurisdiction of the counties, and, it may be, that of the cities or other municipal subdivisions thereof. In order that the Legislature might not be constitutionally controlled in the amount of the special taxes which it was authorized to levy, the Constitution in fixing the maximum levy provided, in the introductory portion of section 9, art. 10, 'except as herein otherwise provided.' This limitation upon the amount of the levy imposed in said section has reference, we think, to property in general, assessed for taxation at its fair cash value, where it is subjected to an ad valorem tax for all purposes, state and municipal, as provided in section 9, art. 10; and does not constitute a restriction upon the power of the Legislature to enact the statute under review, imposing a tax 'for current expenses of state government,' in excess of 3½ mills on the dollar." Large Oil Co. v. Howard, State Auditor, 63 Okla. 143, 163 Pac. 537.

Plaintiff in error contends that the things authorized to be done by section 5, art. 3, chap. 219, Session Laws of 1913, supra, are prohibited by sections 9 and 10 of art. 10 of the Constitution. These sections read as follows:

"Section 9. Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar, to be divided as follows: State levy, not more than three and one-half mills: county levy, not more than eight mills: Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for the school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar

valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase.

"Section 10. For the purpose of erecting public buildings in counties, cities or school districts, the rates of taxation herein limited, may be increased, when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and a majority of the qualified voters of such county, city or school district, voting at such election, shall vote therefor: Provided, that such increase shall not exceed five mills on the dollar' of the assessed value of the taxable property in such county, city or school district."

The clause in section 9, supra, "except as herein otherwise provided," takes or excludes from the operation of the statute certain things which would otherwise be included therein. That which is otherwise herein provided includes the proviso in section 9; it also includes section 10. This section provides that, for the purpose of erecting public buildings in school districts, the rates of taxation herein limited may be increased, by submitting the question to a vote of the people, if a majority of the qualified voters at such election shall vote therefor, but the increase shall not exceed five mills on the dollar of the assessed value of the taxable property in such school district.

The evidence discloses that the qualified voters of school district No. 67 had voted for the erection of a public building in this school district and to increase the rate of levy provided for in section 9. In doing this they came within the "exception as herein otherwise provided," which was contained in section 10, under the provision of which they voted for the $3,000 bond issue. By voting this bond issue for the erection of this school building, all of the provisions of the Constitution were complied with. The levy to provide for the payment of district No. 196 for its equitable interest in this school building and for the interest on the bonds was included in one item, and when collected went into a special fund known as the sinking fund.

The subsequent division of the district under section 5, Session Laws of 1913, supra, did not create a new obligation. The obligation remained the same, i. e., the payment for this building in school district No. 67. It did not increase the cost of the building over and above what had been originally provided for. But certain of this money had been paid by a tax levied on property that since the division of the district was not within the boundaries of district No. 67. The provision of section 5, Laws of 1913, supra, providing for the payment of such an amount as

shall be equitably determined, the proportion of the present value of such school house, and when ascertained shall be levied upon the property of the district retaining the schoolhouse and collected in the same manner as if authorized by a vote of the district for building a schoolhouse, does not conflict with the sections of the Constitution above referred to.

This tax was levied and collected in the same way as the tax to provide money with which to pay the interest on the bonds issued for the erection of this same schoolhouse. The levy did not exceed the five mills for the year 1915; it was only 4.75 mills.

We are of the opinion that the Legislature was clearly within the provision of the Constitution in passing the law providing for the division of school districts—section 5, Laws of 1913, supra. The only thing remaining to be done when this money was collected by the county treasurer was to pay it to the new district, and this the county treasurer refused to do.

There is but one remaining question: That the school board of district No. 67 did not include in its estimate for the expenses of 1915 the amount due school district No. 196, and that the excise board did not have authority to increase the estimate by including a levy to provide this fund. In support of this contention, counsel for plaintiff in error cited the following cases:

"In the case of St. Louis & San Francisco Railroad Company v. Haworth, our Supreme Court says (48 Okla. 132, 149 Pac. 1086): 'Any tax levied in excess of that required by the estimates of the township or school district officers for a fiscal year is illegal and void, (a) The collection of such illegal and void tax may be enjoined.'

"The matter is also very thoroughly discussed in the case of St. Louis & S. F. R. Company v. Thompson, 35 Okla. 138, 128 Pac. 685. The first paragraph of the syllabus is as follows: 'By reason of act of the Legislature, entitled "An act to provide for the levying of taxes on an ad valorem basis," etc., (chap. 64, Sess. Laws 1910, p. 109), the county excise board is without power to levy during any one year for township purposes in any township a tax in excess of the amount estimated by the directors of said township as necessary to defray the current expenses of said township during the ensuing fiscal year as approved by the county excise board and an additional amount of ten per cent. thereon for delinquent taxes. Any tax levied by the excise board in excess of such an approved estimate of the township officers and an additional 10 per cent. for delinquent taxes. is as to such excess levied, illegal and void.'

"Atchison, T. & S. F. Ry. Co. v. Eldredge, 67 Oklahoma, 169 Pac. 1071. In this case the issue involved in the case at bar was squarely before the court, and the court held: 'Prior to the passage of chapter 226, p. 412, Sess. Laws 1917, the county excise board was without authority to increase any estimate certified to them by the board of county commissioners, and taxes levied in pursuance of such increased estimate were void to the extent of such excess over the estimate certified by the board of county commissioners.'"

We do not think these cases are applicable to the question presented here. The money under this levy has all been paid by the taxpayers. They are not the ones raising the question. If any of these taxpayers had raised the question and sought to enjoin the collection of the tax, or had paid the tax under protest, and exercised their right under statute to collect it back, that would present a different question. The tax having been voluntarily paid by the taxpayers and without protest, the county treasurer in a mandamus proceeding to compel payment of the money to school district No. 196, for whom the money was levied and collected, is not in a position to question the right of the excise board to make this levy.

It therefore follows that the trial court was correct in awarding the peremptory writ of mandamus, and the judgment of the trial court is therefore affirmed.

HARRISON, C. J., and KANE, ELTING, and KENNAMER, JJ., concur.