## AARONSON v. SMILEY, Co. Treas.

No. 19697. Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 25, 1930.

Brown & Stater and Burford, Miley, Hoffman & Burford, for plaintiff in error.

Byron Kirkpatrick, Co. Atty., Hugh Webster, Asst. Co. Atty., M. C. Spradling, City Atty., and Ed. C. Cassidy, for defendant in error.

ANDREWS, J. This cause involves the last half of the tax for the fiscal year beginning July 1, 1925. The first half thereof was involved in cause No. 19716. Aaronson v. Smiley, Co. Treas., this day decided, 140 Okla. 255, 283 Pac. 789. The parties appear herein as they did in the trial court, and will be referred to herein as plaintiff and defendant, respectively.

Under date of September 20, 1929, an order of dismissal was entered in this cause on stipulation of the parties dismissing the appeal as to certain portions of the tax involved herein. The decision in this case is subject to that order.

It was stipulated and agreed that the decision in this case shall apply with equal force and effect to the companion cases as listed in a stipulation entered into between the parties hereto.

The petition of the plaintiff was divided into nine causes of action. Each of these causes was considered separately in the briefs, and will be so considered in this opinion. In addition thereto there was a general contention that the petition as a whole did not state a cause of action for the reason that the tax sought to be recovered was not paid at the time and in the manner provided by law and before delinquency. That identical contention was made in cause No. 19716, Aaronson v. Smiley,

supra, between the same parties, and it was therein held:

"Sections 9719 and 9971, C. O. S. 1921, contemplate that county taxing officials will perform their duties in ample time so that a taxpayer may have the benefit of the provisions thereof. Taxpayers have a constitutional right to a reasonable time in which to pay taxes after payment thereof is possible and before the same becomes delinquent and to recover illegal taxes paid under protest. Where the county taxing officials have failed to certify the tax rolls to the county treasurer at the time and in the manner provided by the statute fixing the date of maturity and delinquency thereof, payment under protest may be made by a taxpayer and suit maintained by him to recover the alleged illegal tax notwithstanding payment of the tax is made after the date of delinquency provided by the statute"

—which rule is applicable to the facts as shown by the petition in this case, and the same rule is herein announced.

The defendant contends that this action is "dependent upon and grows out of the champertous, barratrous, and illegal contract speculating in litigation," and a general demurrer to the amended petition was based in part on that contention. The demurrer was overruled, and the same objection was raised in the form of a demurrer to the evidence of the plaintiff, which was overruled, and the defendant presents that contention on cross-appeal. The evidence does not sustain this contention and the authorities cited are not in point. The trial court was of the opinion that the contract between the plaintiff and the Tulsa Taxpayers Association was champertous, illegal, and against public policy, but concluded, as a matter of law, that the defendant could not avail himself thereof, and followed the rule which is stated in 11 Corpus Juris, page 270, as follows:

"Except in one state, the rule is well settled that the fact that there is a champertous contract in relation to the prosecution of the suit between plaintiff and his attorney, or between plaintiff and another layman in no wise affects the obligation of the defendant to plaintiff. It is the champertous contract and not the right of action itself which the contract avoids, and therefore defendant cannot avail himself of the champertous agreement as a defense to the action"

—by the Kansas court in Forbes v. Mohr, 76 Pac. 827, as follows:

"That an action is being carried on under champertous contract between the plaintiff and his attorney cannot be pleaded as a defense to the action"

—and by the United States Supreme Court in Burnes v. Scott, 117 U. S. 582, 29 L. Ed. 991, as follows:

"The question raised by the present assignment of error is not whether a champertous contract between counsel and client is void, but whether the making of such a contract can be set up in bar of a recovery on a cause of action to which the champertous contract relates.

"We must answer this question in the negative. It was wisely said by the Supreme Court of New York, in the case of Thalhimer v. Brinckerhoff, 3 Cow. 623, that 'the right of litigation may be abused, and proper remedies for groundless and vexatious litigation must exist; but the remedies for the abuse of this right should be such as not to impair the free use of the right itself. As the justice or injustice of the claim cannot be known before the termination of the cause, the checks upon unjust litigation must in general consist, not in excluding the suit or the suitor from the courts, but in redress following the decision of justice upon the merits of the case.'"

We think this is a proper statement and that there was no error in so holding, and the action of the trial court thereon is affirmed.

The first cause of action presents the question as to the validity of the free fair levy of .5 mills. The plaintiff admits the validity of the levy of .25 mill under section 8, chap. 38, S. L. 1925, as construed in Alfred v. Bonaparte, Co. Treas., 125 Okla. 164, 256 Pac. 935, and questions the levy of .25 mill which was made under the authority of chapter 159, S. L. 1925. We passed on this contention in cause No. 20142, Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 Pac. 48, and held that such a levy was valid. The trial court sustained a demurrer to the amended petition on this contention. The allegations of the amended petition were that this levy was included in the levy for current expenses. Under the provisions of chapter 159, S. L. 1925, the levy is in addition to the levy for current expenses, and if the allegations of the petition are true, and they are admitted to be true by the demurrer, then the trial court was in error in sustaining the demurrer to the amended petition on this contention. However, an examination of the record in this case, which was admitted on other contentions, shows that this levy was not included in the general fund, but was in addition thereto. The holding of the trial court must be reversed under the rule followed by this court as to demurrers, but upon a new trial, upon the evidence in this case, the trial court should

hold in favor of the defendant on this contention.

The second cause of action involves a levy for highway purposes in excess of 4 mills. The first proposition presented was determined by this court in Missouri, K. & T. Ry. Co. v. Washington County, 136 Okla. 191, 276 Pac. 769, adversely to the plaintiff herein, and we apply the same rule. The second proposition was that the county highway fund was not itemized. In cause No. 19698, Grubb v. Smiley, Co. Treas., 142 Okla. 19, 285 Pac. 38, we found the same contention and the same condition shown in the record. We there held that the levy was void and we made the same holding here.

The trial court erred in sustaining a demurrer to the amended petition on this contention and that order is reversed.

The third cause of action involves the market commission levy of .5 mill. The trial court rendered a judgment in favor of the plaintiff on this contention, and defendant appealed. The levy was made under the provisions of chapter 158, S. L. 1925, which this court, in Rodolf v. Board of County Commissioners, 122 Okla. 120, 251 Pac. 740, held not to have been properly adopted and to be without force and effect. Defendant contends that plaintiff may not avail himself of the invalidity of this act for the reason that the protest was based upon the excess of the levy only. The protest was sufficient under the rule announced in Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969, and Jones v. Kennedy, 118 Okla. 224, 247 Pac. 53.

There was no error in rendering judgment for the plaintiff, and the action of the trial court, on this cause of action, is affirmed.

The fourth cause of action involves the separate school levy and the matter of apportioning school aid funds. In cause No. 19698, Grubb v. Smiley, supra, we discussed this contention at length and announced the rule which is applicable hereto. We find, however, that the trial court here, in our opinion, misapplied this rule and rendered a judgment in favor of the plaintiff in excess of the amount to which plaintiff was entitled, and which necessitates a reversal of the judgment of the trial court on this cause of action. We think that the trial court will have no difficulty in applying the rule announced by this court to the facts in this case, and the judgment of the trial court on this cause of action is reversed for correction.

The fifth cause of action involves the ques-

tion of "reserve for appropriation" discussed by this court in cause No. 20142, Coggeshall & Co. v. Smiley, supra, and we apply the same rule here.

We note in the brief of the defendant the following:

"It then sets up the cost of all contracts, etc., in process of fulfillment that had been charged against the appropriations, as a charge or a reserve or liability against the appropriations. How else can it be 'charged' than by a reserve for that purpose?"

The record in this case does not warrant that statement. The evidence consisted of the financial statement and estimate. The defendant offered no evidence and made no attempt to explain the meaning of the language used, but demurred to the evidence of the plaintiff. That demurrer, in the language of this court, as announced in Haubert v. Navajo Refining Co., 129 Okla. 195. 264 Pac. 151, and a long list of cases,

"* * * admits all the facts which the evidence reasonably tends to establish and all the inferences and conclusions which may reasonably be drawn therefrom, and where on the trial of a case, the plaintiff proves facts sufficient to entitle him to recover, it is not reversible error for the trial court to overrule a demurrer to the evidence."

The trial court was in error in sustaining the demurrer of the defendant to the evidence of the plaintiff on the fifth cause of action, and that order is reversed.

The sixth cause of action involves the library, cemetery. park, and street repair levies. This court, in Missouri, K. & T. Ry. Co. v. Bennett, 122 Okla. 102. 250 Pac. 1021. held that the library and cemetery funds must be within the limitations fixed for current expenses, and that rule applies to this case. This levy was made prior to the Acts of 1927 (Sess. L. 1927, cc. 7, 8). This court, in Acme Milling Co. v. Bonaparte, Co. Treas., 125 Okla. 15, 257 Pac. 284, held that a levy for street repairs and a levy for park purposes must be considered within the limitations provided for current expenses, and that rule applies to this case. See, also, Murray v. Ryan, 125 Okla. 17, 257 Pac. 285. We find nothing in Simmons v. Stuckey, Co. Treas., 113 Okla. 200, 241 Pac. 124, contrary to these holdings. The judgment of the trial court on the sixth cause of action is sustained.

The seventh cause of action involves the same contention as that made in the fifth cause of action herein except that the city of Tulsa is involved rather than Tulsa county. The same order is made. The order sustaining the demurrer to the evidence

of the plaintiff in this cause of action is reversed.

The eighth cause of action involves the Tulsa city sinking fund. It is contended by the plaintiff that there was a surplus from the water department which was not accounted for in any fund. This contention is not supported by the record, which contains a stipulation, as follows:

"It is hereby stipulated and agreed by and between the parties to this action that the water rates for the fiscal year beginning July 1, 1925. and ending June 30, 1926, were not made by the authority of the city of Tulsa for the purpose of paying interest upon any of the then outstanding waterworks bonds or for the purpose of setting aside any accruals to retire said bonds at maturity and that the revenue collected by reason of said rates, as aforesaid, was expended in the payment of the expenditures in the operation and maintenance of the waterworks and water department of the city of Tulsa and for the extension of the water mains of said city."

There is nothing in the record contrary to the facts stipulated, and since the revenue collected was expended, there could not be, under the state of this record, any surplus. The rule announced by this court in cause No. 19094, Perrine v. Bonaparte, 140 Okla. 165, 282 Pac. 332 is a complete answer to the contention that the city is required to fix water rates at an amount sufficient to pay interest and 3 per cent. of the principal of the outstanding bonded indebtedness. We find no error in sustaining the demurrer to the evidence of the plaintiff on this cause of action, and that order is affirmed.

However, we desire to call the attention of defendant to section 30, art. 10, of the Constitution, which reads as follows:

"The Legislature shall require all money collected by taxation, or by fees, fines, and public charges of every kind, to be accounted for by a system of accounting that shall be uniform for each class of accounts, state and local, which shall be prescribed and audited by authority of the state"

—and which, in our opinion, requires that money collected by public charge in the form of water rates must be accounted for in the financial statement and estimate.

The ninth cause of action involves the city of Tulsa sinking fund, and is stated in three propositions, which we will discuss separately.

The first proposition is that there was an excessive statement of the accrued liabilities on outstanding bonds. This involves

the determination of how the bonded indebtedness shall be divided to determine the portion' to be raised by taxation each year. We discussed that contention in cause No. 20142. Coggeshall & Co. v. Smiley, supra, and the rule therein announced is applicable to the facts in this case and is applied thereto. The trial court erred in sustaining the demurrer to the evidence of the plaintiff, and that order is reversed and the cause remanded to the trial court with directions to determine, under the rule announced, what portion, if any, of the levy is excessive.

The second proposition is that there was an excessive estimate of the amount needed for interest. The evidence consisted of the financial statement and estimate. There is a schedule of bonds and judgments therein, included in which is a column headed "Annual Maturity of Coupons and Interest," and a column headed "Annual Accrual on Bonds and Judgments." Plaintiff attacks the correctness of the interest charges. The law was plainly stated by Mr. Justice Lester in Ryan v. Bass Furniture Co., 113 Okla. 86, 241 Pac. 786, to be:

" 'Any tax levied in excess of that required by the estimates of the township or school district officers for a fiscal year is illegal and void.' St. Louis & S. F. R. Co. v. Haworth, 48 Okla. 132, 14 Pac. 1086; St. Louis & S. F. R. Co. v. Thompson, 35 Okla. 138, 128 Pac. 685; St. Louis & S. F. R. Co. v. Amend, 44 Okla. 602, 145 Pac. 1117; St. Louis & S. F. R. Co. v. Tate, 35 Okla. 563, 130 Pac. 941; St. Louis & S. F. R. Co. v. Lindsey, 42 Okla. 198, 140 Pac. 1153; El Reno Wholesale Gro. Co. v. Taylor, 87 Okla. 140, 209 Pac. 749; McGee v. School Dist., 82 Okla. 18, 198 Pac. 61."

We do not intend to analyze all the evidence offered, but will refer to three instances. The first of these is a) series of boulevard bonds dated February 1, 1913, of which $5,500 was outstanding on 6-30-1925, drawing interest at the rate of 5 per cent. The annual maturity of interest was computed to be $300. It is clear that the amount should have been only $275. This is clearly in violation of the rule just referred to.

The next instance is a judgment dated 10-26-1922, in the amount of $14,250.93, drawing interest at 6 per cent. The annual maturity of interest was computed at $3,135.17 and the annual accrual on the judgment was $4,750.31. It is clear that the interest should have been approximately $855. The defendant attempts to defend this computation and says:

"The amount outstanding being $14,250.93, the levy should be for one-third thereof,

as made, and the levy for interest should be at the rate of 6 per cent. per annum on said amount from October 22, 1922, to June 30, 1926, or $3,135.17 as made."

This contention is without merit. It is true that a levy of one-third of the amount of the judgment was made, but it was made in addition to the amount computed for interest. There is no authority under our law for a levy to pay interest from October 22, 1922, to June 30, 1926, in one fiscal year. In O'Neil Engineering Co. v. Incorporated Town of Ryan et al., 32 Okla. 738, 124 Pac. 19, this court had under consideration the provisions of sections 26 and 27, art. 10, of the Constitution, and said:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778; City of Ardmore v. State ex rel., 24 Okla. 862, 104 Pac. 913; Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. 279; Litchfield v. Vallou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; McGowan v. Ford, 107 Cal. 177, 40 Pac. 231; Sutro v. Pettit, 74 Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442; First National Bank v. Doon Dist. Tp., 86 Iowa, 330, 53 N. W. 301, 41 Am. St. Rep. 489; Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L Ed. 1060. In the Campbell Case, supra, Mr. Justice Williams, in discussing this provision, says: 'The settled purpose has been to replace restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision, the government is dependent from year to year upon the periodical vote of supplies.'

"And further: 'No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness,' "

—and held to the same effect.

The third instance is the waterworks bond issue of 5-15-1925, for which the interest was computed at $34,500, which is claimed to be excessive. The annual interest charge was $25,875, but the defendant claims the right to levy for interest coupons due November 14, 1925, May 15, 1926, and November 15, 1926, under the provisions of sections 26 and 27, art. 10, of the Consti-

tution, and if this is true, the $34,500 is a correct amount.

We discussed this contention in cause No. 20142, Coggeshall & Co. v. Smiley, supra, and the rule announced therein is applicable hereto.

These bonds having been issued on May 15, 1925, the first levy for interest could have been made as of July 1, 1925, and should have been in an amount sufficient to retire the interest maturities for the fiscal year commencing July 1, 1925. There is no authority of law for including therein the interest maturity of November 15, 1926.

We have mentioned these instances only for the purpose of showing the excess therein. The trial court should apply the rule herein announced to each of the bonds and judgments questioned and render judgment in accordance with his finding as to each item.

The third proposition involves an alleged conversion of sinking funds and the inclusion thereof in the general fund.

Certain bonds had been sold at a premium, which had been placed in the sinking fund during preceding fiscal years. On July 2, 1924, pursuant to an order which, with formal parts omitted, is as follows:

"July 2nd, 1924.

"R. L. Laws, City Treasurer,
"Tulsa, Okla.

"Dear Sir:

"Kindly transfer the following sums of money to the general fund of 1923-1924 as of June 30th, 1924, as per order of Commission meeting of July 2nd.

"Sewer Bonds of 1922 _____$17,000.00
"Water Bonds of 1922 _____ 67,291.00
"Heavy Traffic Bonds _____ 207.50
"Park Bonds of 1924 _____ 803.57
"Total _____$85,302.07
"Yours very truly,
"Roy Garbett, City Auditor,
"AW:CH                    "By Roy Gabett."

—the county treasurer transferred from the sinking fund to the general fund the amount of those premiums in the total sum of $85,-302.07. The legality of that action is attacked. The defendant contends that this transfer was during the fiscal year 1923-24 and cannot be attacked during the fiscal year 1925-26. We do not think the record sustains this contention. This order clearly shows that it was made on July 2, 1924, and at the close of the fiscal year 1923-24 the money was in the sinking fund. The fact that the transfer was dated back to June 30, 1924, does not at all affect the fact that the money was in the sinking fund

on July 2, 1924. Since it was in the sinking fund on July 2, 1924, the transfer was made during the fiscal year 1924-25. If the transfer was illegal, the funds must be considered as on hand at the close of the fiscal year 1924-25 and must be accounted for in the surplus in the sinking fund for that year in making the levy for 1925-26. The governing statute is section 8576, C. O. S. 1921, which reads as follows:

"Whenever any money shall remain in the sinking fund of any municipality on the last day of June of any year, against which no charges are outstanding, it shall be turned into such fund for the following year and the levy for the following year reduced accordingly."

We have then the legal proposition as to whether or not the premiums on bonds should be credited to the sinking fund, as contended by the plaintiff, or to the general fund, as contended by the defendant.

The taxpayers of the city of Tulsa, in voting these bonds, authorized the expenditure of the amount of money approved by them. They did not authorize the expenditure of the amount approved by them for the purposes authorized and an additional amount for current expenses. There was no intention that any portion of the funds derived from the sale of the bonds should be diverted from the purpose for which they were authorized and used for another purpose.

The premium that a bond brings is dependent almost entirely upon the interest rate. If the defendant's contention is correct the governing body may fix the interest rate at an amount that will produce a premium thereby obtaining the benefit of the premium for use as current expense. The interest on the bonds must be paid from the sinking fund. This action would result in increasing the sinking fund levy over what it would otherwise be. On the other hand, if the sinking fund is credited with the amount of the premium received, the interest rate is to that extent immaterial, as the increased burden by reason of the interest rate would be reduced by a credit of the premium received.

The defendant contends that premiums have no relation to interest. We do not agree with that contention. Where 5 per cent. bonds are authorized and a 4½ per cent. bond will bring par and accrued interest, the fixing of the interest rate at 5 per cent. must of necessity increase the value of the bond and produce a premium.

Defendant cites as authority only section

4281, C. O. S. 1921, the applicable portion of which reads as follows:

"It shall be unlawful for any board * * * to sell, agree to sell, or contract to sell, any bonds issued by vote of the people for any sum less than par with accrued interest added, and any and all commission allowed any firm, person or corporation for the sale of such bonds must, after being deducted from the sum total for which said bonds are sold, leave in the treasury the sum equal to the par value and accrued interest thereof"

—and contends that under this statute commission on the sale of the bonds must be deducted from the sum for which the bonds were sold. We agree with that contention, and we agree that the sale of the bonds must be at an amount that will net the municipality par value and accrued interest. The premium received over and above par value, accrued interest, and commissions is what is under consideration here.

Defendant contends that, since the general fund has to pay the expense of the election, that fund is entitled to the premium. We cannot so hold.

We think and hold that, under our Constitution and taxing statutes, the accrued interest on bonds and the net premium on bonds should be credited to and held in the sinking fund for the purpose of reducing the tax levy necessary to pay the interest thereon and create a sinking fund for the retirement thereof.

The trial court erred in sustaining the demurrer to the evidence of the plaintiff on this cause of action, and that order is reversed.

This cause is remanded to the trial court for further proceedings in accordance herewith.

MASON, C. J., LESTER, V. C. J., and HUNT, RILEY, HEFNER, and CULLISON, JJ., concur. CLARK AND SWINDALL, JJ., absent.