[Civ. No. 7283. First Appellate District, Division One.—July 24, 1930.]

CITY OF OAKLAND (a Municipal Corporation) et al., Appellants, v. HARRY G. WILLIAMS, as Auditor, etc., Respondent.

Markell C. Baer, Port Attorney, and Hilton J. Melby, Deputy Port Attorney, for Appellants.

Nowland M. Reid, City Attorney, Long Beach, Beach Vasey, Deputy City Attorney, J. Leroy Johnson, City Attorney, Stockton, T. P. Wittschen and L. W. Irving, *Amici Curiae* in Support of Appellants.

Preston Higgins, City Attorney, Alfin N. Nelson, Chief Deputy City Attorney, and John W. Collier, Deputy City Attorney, for Respondent.

DOOLING, J., *pro tem.*—Appeal from a judgment entered after an order sustaining a demurrer to appellants' petition for writ of mandate. Petitioners seek to compel respondent to transfer to the 1925 Oakland harbor improvement fund from the 1925 Oakland harbor interest fund the amount of the premium realized on the sale of certain improvement bonds. The sole controversy between the parties is whether a premium realized on the sale of these bonds, which were issued under the provisions of the Municipal Bond Act of 1901 (Stats. 1901, p. 27), should be placed in the construction fund or the interest and redemption fund. This depends upon the proper construction to be given to the pertinent provisions of the statute.

Section 6 of the act in question is in the following language: "Such bonds may be issued and sold by the legislative branch of the city, town or municipal corporation as they may determine, but for not less than their par value, and the proceeds of such bonds shall be placed in the municipal treasury to the credit of the proper improvement fund, and shall be applied exclusively to the purposes and objects mentioned in the ordinance."

It is conceded by respondent that when bonds are sold for more than their par value the entire purchase price, including the premium, constitutes the proceeds of the bonds. Indeed, this would not seem to be open to dispute. The sole question before us, therefore, is narrowed to this: What are the purposes and objects mentioned in the ordinance to which "the proceeds" shall be "applied exclusively"? The answer to this question is to be found in section 2 of the statute, which reads, so far as here material, as follows: "Whenever the legislative branch of any city, town or municipal corporation shall, by resolution passed by vote of two-thirds of all its members determine that the public interest or necessity demands the acquisition, construction or completion of any public improvement . . . the cost of which will be too great to be paid out of the ordinary annual income and revenue of the municipality, it may at any

subsequent meeting of such legislative branch, by a vote of two-thirds of all its members, order the submission of the proposition of incurring a bonded debt for the *purpose* set forth in said resolution, to the qualified voters of said city, town or municipal corporation, at an election held for that purpose; provided, that propositions of incurring indebtedness for more than one *object* or *purpose* may be submitted at the same election. The ordinance calling such election shall recite the *objects* and *purposes* for which the indebtedness is proposed to be incurred, the estimated cost of the proposed public improvements, the amount of the principal of the indebtedness to be incurred therefor, and the rate of interest to be paid on said indebtedness, and shall fix the date on which such election will be held, the manner of holding such election and the voting for or against incurring such indebtedness. . . . "

We have italicized the words "object" and "purpose" wherever they occur in the above-quoted section. From this it appears clearly that the "purpose" for which the submission of the proposition to incur a bonded debt may be submitted to the people is the "purpose" set forth in the preliminary resolution. The only "purpose" authorized to be set forth in the preliminary resolution is "that the public interest or necessity demands *the acquisition, construction or completion of any public improvement."* It follows that the only "purpose" for which the bond election may be called is the acquisition, construction or completion of the particular public improvement specified in the preliminary resolution. It would seem to follow, likewise, that when the statute requires that "the ordinance calling such election shall recite the *objects* and *purposes* for which the indebtedness is proposed to be incurred" the words "objects and purposes" again mean and refer back to the acquisition, construction or completion of the public improvement specified in the preliminary resolution. This being so, when section 6 provides that "the proceeds of such bonds . . . shall be applied exclusively to the purposes and objects mentioned in the ordinance" it can only mean that such proceeds shall be applied exclusively for the acquisition, construction or completion of the public improvement for which they were voted. Such, inferentially at least, was the holding of our Supreme Court in *Williams* v. *Stockton,* 195 Cal. 743

[235 Pac. 986, 987], where the court said, referring to the proceeds of bonds which had been issued under the same statute: ''The bonds were duly issued and sold at par (i. e., $600,000) and a premium of $50,556. The sum of $4,146.25 was realized from the sale of buildings on the land purchased for the site and the rental thereof for one month. A total of $654,702.25 was therefore available for the new city hall as proposed.''

Respondent cites and relies on *People* v. *Dakin*, 43 Hun (N. Y.), 382, *Aaronson* v. *Smiley*, 142 Okl. 29 [285 Pac. 59], and *In re Bliss*, 142 Okl. 1 [285 Pac. 73]. The courts have too often adverted to the fact that cases construing other statutes are only helpful where the language of the statutes involved is substantially identical to require any citation of authority to that effect. In the Dakin case the statute under which the bonds were issued differed from ours in the very material respect that it limited the amount authorized to be borrowed to $25,000. Bonds in that amount having been sold at a premium the court, after calling attention to the fact that ''the amount the common counsel could lawfully borrow could not exceed $25,000,'' held that no more than $25,000 could be used for the proposed improvement. The court added significantly: ''This construction makes the entire loan a lawful one; if not adopted it would be difficult to justify the city in not stopping the sale of its bonds when the total of $25,000 was reached.''

The two Oklahoma cases construed a statute which contained no provision similar to ours, that the proceeds of the bonds must be used exclusively for the objects and purposes mentioned in the ordinance. Under the circumstances we cannot consider these cases controlling over the plain meaning of the language used in our statute.

Our construction of the Municipal Bond Act of 1901 is reinforced by the consideration that in other statutes where the legislature has intended that the premium from the sale of bonds should be used for the payment of interest on the bonds it has so provided in explicit language. (Act 2204, Deering's Gen. Laws, 1923, p. 762, sec. 20; Act 936, Deering's Gen. Laws, 1923, sec. 15; Act 9129, Deering's Consolidated Supplement, 1925–27, p. 2189, sec. 7, subds. g and h; Pol. Code, sec. 4087a.) It thus appears that in those cases

in which the legislature has intended that the premium should be used for interest and redemption payments it has used clear and unequivocal language to accomplish that purpose.

We are satisfied that the language of the act of 1901 above quoted as clearly and unequivocally requires the proceeds from the sale of bonds issued under it, including any premium, to be placed in the construction fund and not to be used for interest and redemption payments at least until the purposes and objects for which the bonds were issued have been fully accomplished.

Judgment reversed, with direction to the trial court to overrule the demurrer.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 23, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 22, 1930.