Dear State Representative Shumate,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. When a school district sells or disposes of property that was financed in whole or in part by the issuance of bonds, how may the proceeds be used?
 2. Is there a time limitation past which a governmental bond issuer need not account for proceeds from the sale or disposal of property financed in whole or part by the issuance of bonds?
 A. Use of Proceeds From Property Financed by the Issuance of Bonds 1. The Oklahoma Constitution and Statutes Authorize School Districts to Issue Bonds
¶ 1 Article X, Section 26 of the Oklahoma Constitution makes provision for political subdivisions to become indebted in an amount exceeding the revenue produced for that year and provides in pertinent part:
 (a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that if a school district has an absolute need therefor, such district may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture, fixtures or equipment; and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need, unless otherwise provided by law. . . . Provided, further, that any county, city, town, school district, or other political corporation, or subdivision of the state, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five (25) years from the time of contracting the same. . . .
Id. (emphasis added).
¶ 2 The statutory language for school districts to issue bonds is found at 70 O.S. 2001, § 15-101[70-15-101], which provides:
 Whenever it shall become necessary for the board of education of any school district to raise sufficient funds for the purchase of a school site or sites, or to erect or purchase and equip a suitable school building or buildings, either or both, or for the purpose of making repairs to an existing school building or buildings, or for the purchase of school furniture and fixtures, or for making improvements to any school site or sites, either or both, it shall be lawful for such board of education to borrow money for which it is hereby authorized and empowered to issue bonds bearing a rate of interest not exceeding seven percent (7%) per annum, payable semiannually, at such place as may be shown on the face of such bonds, which bonds shall be payable serially as otherwise provided by law in not more than twenty-five (25) years from date; and the board of education is hereby authorized and empowered to sell such bonds at not less than their par value; provided, before any bonds shall be issued, the board of education shall cause an election to be held in such district as herein provided; provided, further, bonds may be voted in one issue and at the same election for any or all of the purposes hereinbefore enumerated.
Id. (emphasis added). Additional statutory language for issuance of bonds is found at 70 O.S. 2001, § 15-106[70-15-106] (regarding purchase of transportation equipment), and 70 O.S.Supp. 2010, § 15-106.1[70-15-106.1] (regarding purchase of equipment). In conjunction with these constitutional and statutory provisions, Article X, Section 16 of the Oklahoma Constitution generally directs how borrowed funds shall be used:
 All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose.
Id.
 2. The Oklahoma Supreme Court Cases
¶ 3 The Oklahoma Supreme Court has addressed the issue of the proper use of proceeds from the sale or disposal of government owned property that was financed in whole or in part by the issuance of bonds. In the case of Protest of Reid, 15 P.2d 995 (Okla. 1932), the city of Woodward sold a municipal light and power plant that was constructed from the proceeds of the sale of a bond issue authorized by the voters of the city for that purpose, pursuant to the provisions of Article X, Section 27.[1] Id. at 997. A dispute arose concerning the proceeds of the sale. The court described the issue as follows:
 An issue is thereby presented. That issue is dependent upon the meaning of section 16, article 10, of the Constitution. By the provisions of that section, "all laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose." That is a part of the public policy of the state. City Nat'l Bank v. Incorporated Town of Kiowa et al., 104 Okl. 161, 230 P. 894, 39 A. L. R. 206. The question is presented as to whether that constitutional limitation relates to subsequent uses of the borrowed money as well as to the first use thereof. That it relates to the first use thereof has been determined by this court in Re Bliss, 142 Okl. 1, 285 P. 73, and Aaronson v. Smiley, County Treas., 142 Okl. 29, 285 P. 59, wherein we held that accrued interest on bonds and the net premium derived from the sale of bonds should be credited to and held in the sinking fund for the purpose of reducing the rate of ad valorem tax levy necessary to pay the interest thereon and to create a sinking fund for the retirement thereof. That it relates to a subsequent use thereof has been held by this court in Gulf, C. S. F. Ry. Co. v. Excise Board, 141 Okl. 34, 283 P. 1003, wherein we held: "Where a municipality borrows money for the purpose of purchasing or constructing a water and light plant, and thereafter sells the same and receives payment thereof, partly in cash and partly in promissory notes evidencing the unpaid portion, interest collected on the notes and the amount evidenced by the notes must be credited to the sinking fund, for the purpose of paying the interest on the bonds evidencing the indebtedness and to retire the said bonds at maturity."
Id. (emphasis added).
¶ 4 In analyzing the sale, the court stated:
 The record in this case shows that a public utility has been converted into money by reason of the sale thereof for a cash consideration. Section 16, article 10, of the Constitution is a limitation. To construe it to apply only to the first use of the borrowed money would be to defeat its practical operation, for money might be borrowed to build a light plant, and the money so borrowed might be used to build a light plant, but the light plant might be sold and the proceeds of the sale might be used for some other purpose. We cannot give the section a construction which would operate to defeat the purpose thereof.
Id. at 997-98. The court continued by discussing the narrow scope of Article X, Section 27, i.e., "purchasing or constructing public utilities, or for repairing the same," and stated:
 Under the provisions of that section, any city or town may become indebted in any amount for the purposes therein stated. That limitation as to the use of the borrowed funds is applicable to subsequent uses as well as to the first use thereof.
Id. at 998 (emphasis added). The court concluded by holding:
 We, therefore, hold that the provisions of sections 16 and 27, article 10, of the Constitution are applicable not only to the immediate use of the money borrowed, but to any subsequent use thereof, and that they apply as well to the proceeds of the sale of the property purchased with borrowed money as to the borrowed money with which the property was purchased.
. . . .
 When a municipally owned public utility, which was purchased, constructed, or repaired under the provisions of sections 16 and 27, article 10, of the Constitution, is sold by the municipality, the proceeds of the sale may be used for the purpose for which the money was borrowed, under the statutory provisions and the ordinances and charter provisions of the city with reference to the expenditure of public funds. If not so used, an amount equal in value to the amount of all of the indebtedness incurred by the municipality for the purchase, construction, or repair of the same, with all of the interest thereon, whether matured and paid or unmatured, must be paid into the sinking fund, and the remainder thereof must be paid into the current expense fund, to reimburse the ad valorem taxpayers of the city for the amount of taxes paid by them or chargeable against their property by reason of the incurring of the indebtedness.
Id. at 998 (emphasis added).[2]
¶ 5 In addition to opining on municipalities selling property financed by bond proceeds, the Oklahoma Supreme Court has addressed the issue with regards to school districts. State ex rel. Grimes v. Bd. of Educ.,99 P.2d 876 (Okla. 1940).[3] The Oklahoma City Public Schools sold the Lovell School and placed all the proceeds in a fund designated as "building replacement fund." Id. at 877. The school had been both originally built and subsequently enlarged with funds received from bond issues. Id. After discussing Protest of Reid, 15 P.2d 995 (Okla. 1932), the court stated:
 We agree with the plaintiffs that the above rule may as well apply to a building belonging to a school district as to a public utility of a city. Although section 27 of the Constitution, supra, does not apply to school buildings, section 10, article 10 of the Constitution, [4] together with section 6880, O.S. 1931, 70 Okl.St.Ann. § 200[70-200], [5]
grants to school districts a similar authority to issue bonds for the erection and repair of such buildings, and when the two latter sections are taken in connection with section 16, article 10 of the Constitution, limiting the expenditure of borrowed funds to the purpose for which the indebtedness was incurred, the rule of law would be the same.
Grimes, 99 P.2d at 878 (footnotes added).
 3. Example
¶ 6 In applying these precedents to your request, by way of example, a school district issued bonds and used the proceeds for the following purposes (as authorized in the bond election):
 * In 1939 it bought real property for $100,000.
 * In 1942 it built a school building on the site for $400,000.
 * In 1995 it repaired the building's HVAC[6]
system and put in new windows at a cost of $75,000.
 * All bond liability was retired prior to sale.
¶ 7 In 2011 the school is closed and the building is sold for $2,000,000. Applying the law discussed above to this example, the following should occur:
 * The District must use the $100,000 [originally incurred in 1939] only to buy real property. If it cannot, or chooses not to use the money to buy real property then those funds must go into the District's sinking fund.
 * The District must use the $400,000 [originally incurred in 1942] only to build a school building. If it cannot use the money to build a school building then those funds must go into the District's sinking fund.
 * The District must use the $75,000 [originally incurred in 1995] only to repair buildings. If it cannot use the money to repair a building then those funds must go into the District's sinking fund.
 * The remaining $1,425,000, less interest expense, [the surplus over what was borrowed] can be spent however the District wants.
¶ 8 Whether the District can spend funds for the "same stated purpose" as they were originally incurred will depend upon the language used in the original bond propositions. This is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
¶ 9 To summarize, when a school district borrows funds by the issuance of bonds pursuant to Article X, Section 26 of the Oklahoma Constitution and 70 O.S. 2001, § 15-101[70-15-101] for the purpose of the "purchase of a school site or sites, or to erect or purchase and equip a suitable school building or buildings, either or both, or for the purpose of making repairs to an existing school building or buildings, or for the purchase of school furniture and fixtures, or for making improvements to any school site or sites, either or both," and the school district later sells the property, it must either use the sale proceeds representing the funds borrowed and applicable interest paid for the same specific purpose stated in the bond measure, if possible, or it must pay back the proceeds into the sinking fund.
 II. Time Limitation in Accounting for Proceeds
¶ 10 Your second question relates to the time period to account for sale proceeds representing bond funds borrowed and applicable interest paid. Neither of the above-cited cases discuss a limitation of time to account for these sale proceeds. Reid stated, "In the instant case the light and power plant was constructed from the proceeds of the sale of bonds issued pursuant to the provisions of section 27, article 10, of the Constitution, approximately twenty years ago." Id., 15 P.2d at 998. Grimes was decided by the Oklahoma Supreme Court in 1940, and the "Lowell School was erected in 1909 with funds derived from a bond issue, and that in 1919 it was enlarged with funds received from a bond issue of that year." Id., 99 P.2d at 877. There is no specific discussion of time limitation, but the court stated "the use of the borrowed funds is applicable to subsequent uses as well as to the first use thereof." Reid, at 998. Thus, we conclude there is no time limitation past which a governmental bond issuer need no longer account for the proceeds from the sale or disposal of property financed in whole or in part by the issuance of bonds.
 ¶ 11 It is, therefore, the official Opinion of the Attorney General that:
 1. When a school district borrows funds by the issuance of bonds for a specific purpose and the school district later sells the property, it must either use the sale proceeds representing the funds borrowed and applicable interest paid for the same specific purpose stated in the bond measure, if possible, or it must pay back the proceeds into the sinking fund. Okla. Const. art. X, § 16; 26; 70 O.S. 2001, § 15-101[70-15-101]; Protest of Reid, 15 P.2d 995, 998 (Okla. 1932); State ex rel. Grimes v. Bd. of Educ., 99 P.2d 876, 878 (Okla. 1940).
 2. There is no time limitation past which a governmental bond issuer need no longer account for the proceeds from the sale or disposal of property financed in whole or in part by the issuance of bonds. The limitation on sale proceeds concerns "the use of the borrowed funds [being] applicable to subsequent uses as well as to the first use thereof." Reid, 15 P.2d at 998; Okla. Const. art. X, § 16.
E. SCOTT PRUITT Oklahoma Attorney General
DAVID L. KINNEY Assistant Attorney General
[1] Okla. Const. art. X, § 27 allows:
 Any incorporated city or town in this state may, by a majority of the voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in Section 26, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city or town, or for the purpose of constructing, reconstructing, improving or repairing streets or bridges. Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same.
Id.
[2] This office has also issued an official Opinion regarding the proper use of proceeds from a municipality selling property financed by the issuance of bonds. A.G. Opin. 77-148, at 68. In said opinion the Attorney General considered the following: a municipality purchased acreage for a water system that was subsequently found unsuitable for that purpose. The city subsequently asked if it could sell the water system property and use the funds for another purpose. The Attorney General opined that the property could be sold but proceeds would have to be used for the same purpose-a water system, returned to the taxpayers, or subject to an affirmative vote of the people, appropriated to another use. Id. at 70.
[3] The holding in Reid was re-affirmed in Grimes. However, it was modified to the extent that the funds received from such a sale had to be properly appropriated by the county excise board before they could be used. Thus, while Grimes clarified the Reid decision as to the procedural steps necessary to re-invest the proceeds from the sale of public lands acquired through a bond issue, the court upheld its previous interpretation of the Oklahoma Constitution as set forth in Reid. See Grimes, 99 P.2d at 879.
[4] Article X, Section 10 of the Oklahoma Constitution provides for the annual millage levy to pay the principle and interest on bonds issued.
[5] Codified as amended at 70 O.S. 2001, § 15-101[70-15-101].
[6] Heating, ventilation and air condition system.